THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

**TIKTOK GLOBAL LLC**,
a Florida limited liability company;

        Plaintiff,

v.

**BYTEDANCE LTD.**, **TIKTOK INC.**, and
**YIMING ZHANG**,

        Defendants.

_____/

## <u>COMPLAINT</u>

    Plaintiff, TIKTOK GLOBAL LLC, by and through undersigned counsel, hereby files this Complaint against Defendants, BYTEDANCE LTD., TIKTOK INC., and YIMING ZHANG, and allege as follows:

### INTRODUCTION

    1.    In the ever-evolving landscape of social media, few platforms have captured the world's attention quite like TikTok. With its addictive short-form videos and algorithm-driven content delivery, the Chinese-owned app quickly became a global phenomenon.

    2.    However, its meteoric rise was not without controversy, particularly in America, where concerns about data privacy and national security began to mount.

    3.    As 2020 unfolded, these concerns reached a fever pitch. The Trump administration, citing national security risks, issued an executive order that would effectively ban TikTok in the United States unless its Chinese parent company, ByteDance, divested its U.S. operations to an American company.

4.      Enter Plaintiff TikTok Global ("TG") a group of American investors who saw an opportunity not just for profit, but to address the national security concerns head-on.

5.      This set the stage for what should have been a straightforward process of acquisition and divestment, but instead, it became a twisted tale of corporate intrigue, conspiracy, and antitrust violations.

6.      Plaintiff would soon discover, the game was rigged from the start because ByteDance had other plans, plans that circumvented proper procedures, stifled competition, and maintained ByteDance's control over TikTok's U.S. operations – all under the guise of compliance with the executive order.

7.      This action arises from Defendant BYTEDANCE LTD.'s ("ByteDance") and subsidiary TIKTOK INC.'s ("TikTok") ongoing unlawful conduct in interfering with Plaintiff legal rights created thru timely, accurate, and complete in all material respects Committee on Foreign Investment in the United States ("CFIUS")[1] certification as defined by § 800.204(a)(1)(2)(ii) and September 14, 2020 CFIUS compliant $33.3 billion dollar acquisition agreement of TikTok's U.S. operation. [2]

---

[1] CFIUS member agencies include the Departments of Treasury (chair), State, Defense, Justice, Commerce, Energy, and Homeland Security; the Office of the United States Trade Representative; and the Office of Science and Technology Policy within the Executive Office of the President. The Office of the Director of National Intelligence and the Department of Labor are ex-officio members, and five White House offices are observers.   https://home.treasury.gov/system/files/206/CFIUS-Public-Annual-Report-CY-2019.pdf

CFIUS operates pursuant to section 721 of the Defense Production Act of 1950, as amended (Section 721), and as implemented by Executive Order 11858, as amended, and the regulations at chapter VIII of title 31 of the Code of Federal Regulations (C.F.R.).

[2] § 800.204(a)(1)(2)(ii)   accurate and complete in all material respects,
(a) The term certification means a written statement signed by the chief executive officer or other duly authorized designee of a party filing a notice, declaration, or information, certifying under the penalties provided in the False Statements Accountability Act of 1996, as amended (18 U.S.C. 1001) that the notice, declaration, or information filed: (1) Fully complies with the requirements of section 721, the regulations

8.      The intrigue deepened when the Plaintiff's TikTok Global brand IP was purloined to mislead the public during a live CNBC broadcast all while a pending Plaintiff CFIUS certification and timely executable acquisition agreement was suppressed.

9.      By orchestrating these charades, ByteDance continues to maintain their grip on TikTok by erecting insurmountable barriers to entry, stifling any legitimate acquisition offers that dare challenge their dominion.

10.      Fortunately the U.S. Supreme Court has seen thru the Defendants' many hoaxes, casting off the effects of its lobbying budget  in *TikTok Inc. v. Garland, 604 U.S. ___ (2025),* holding that a law prohibiting U.S. companies from providing services to TikTok unless U.S. operation of the platform is severed from Chinese control did not violate the First Amendment.

## PARTIES

11.      Plaintiff, TIKTOK GLOBAL LLC ('TG'), is a Florida limited liability company, organized under the laws of Florida, and successor to Arkansas based, Tiktok Global Network Inc. ("TGN"), and Delaware incorporated Tiktok Global Inc. ("TGI"). TG's members are citizens of New York.

12.      Defendant, TIKTOK INC. ("TikTok"), manages Tiktok.com, a popular social media platform and is a California corporation with its principal place of business in Los Angeles.

13.      Defendant, BYTEDANCE LTD. ('ByteDance'), is a private company with operations and principal place of business in China. Both Bytedance and Tiktok are foreign entities

---

in this part, and any agreement or condition entered into with the Committee or any member of the Committee, and (2) Is accurate and complete in all material respects, as it relates to: (i) The transaction; and (ii) The party providing the certification, including its parents, subsidiaries, and any other related entities described in the notice, declaration, or information.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

under CFIUS § 800.220(a).[3]

14.     Defendant, YIMING ZHANG, was at all relevant times the CEO of ByteDance.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, specifically the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

**CFIUS & 2020 Executive Orders (EO)**

16.     The Committee on Foreign Investment in the United States ("CFIUS") published final rules on January 17, 2020, to implement the Foreign Investment Risk Review Modernization Act (FIRRMA) enacted in August 2018.

17.     International Economic Law and Policy Blog summarized the EOs:

> "On August 6, 2020, President Trump issued an executive order entitled Addressing the Threat Posed by TikTok, and Taking Additional Steps to Address the National Emergency With Respect to the Information and Communications Technology and Services Supply Chain ("Aug. 6 EO"). Citing statutory authority under the International Emergency Economic Powers Act ("IEEPA"), the Aug. 6 EO prohibits any transactions by persons subject to U.S. jurisdiction with ByteDance Ltd., the parent company of the popular video-sharing mobile application TikTok, beginning 45 days after the date of the order, and authorizes the Secretary of Commerce to identify the transactions subject to the prohibition 45 days after the date of the order. The Aug. 6 EO justifies its action by referencing TikTok's alleged threats to U.S. national security through data collection, content censorship, and

---

[3] (a) The term *foreign entity* means any branch, partnership, group or sub-group, association, estate, trust, corporation or division of a corporation, or organization organized under the laws of a foreign state if either its principal place of business is outside the United States or its equity securities are primarily traded on one or more foreign exchanges.

misinformation campaigns.

About a week later, on August 14, 2020, President Trump issued another executive order entitled Order Regarding the Acquisition of Musical.ly by ByteDance Ltd. ("Aug. 14 EO"). Pursuant to the power granted to the President and the Committee on Foreign Investment in the United States ("CFIUS") under the Exon-Florio Amendment, the Aug. 14 EO orders ByteDance to divest, within 90 days, from the assets and data that TikTok has gathered in the United States. ByteDance falls within the purview of CFIUS because of its 2017 acquisition of lip-sync app Musical.ly, which ByteDance later merged into TikTok to create a single integrated social media application. ByteDance did not submit an application for CIFUS review at the time of the acquisition, but CFIUS retroactively reviewed the acquisition and unanimously recommended divestiture to the President.

Amid reports of negotiations for a potential sale of TikTok, TikTok and ByteDance filed a lawsuit on August 24 before the U.S. District Court for the Central District of California. The lawsuit challenges the Aug. 6 EO as unconstitutional and ultra vires, and seeks a court injunction against the order." (**Ex. 1**).

18.     The EO also established specific procedures under Section 2(d), requiring that: (i) ByteDance notify CFIUS in writing of any intended buyer, and (ii) allow 10 business days for CFIUS review before completing any sale.[4]

19.     These procedures were designed to ensure that any divestiture of TikTok's U.S. operations would address national security concerns and result in a complete transfer of ownership and control to a U.S. entity.

**Plaintiff Incorporates To Acquire TikTok U.S. From ByteDance.**

20.     On September 6, 2020, Plaintiff TikTok Global  incorporated as an American held CFIUS divestment solution to acquire ByteDance's TikTok U.S. operations.

---

[4] CFIUS three-step process for evaluating proposed or pending investments (1) a 30-day declaration filing; (2) a 45-day national security review (from 30 days) ,including an expanded time limit for analysis by the Director of National Intelligence (from 20 to 30 days); (3) a 45-day national security investigation, with an option for a 15-day extension for "extraordinary circumstances"; and a 15-day presidential determination.

21.     Concurrently the Plaintiff acquired and launched corporate website Tiktokglobalnetwork.com with private email to use for ongoing communications with its investors, ByteDance, Tiktok, CFIUS, and news media.

22.     That same day Plaintiff TikTok Global began communicating with different Bytedance executives by email and Linkedin messages to inform them of the Plaintiff's impending intent to acquire its TikTok U.S. property. The Plaintiff explained its acquisition was strategic because TG planned to contribute additional online video assets and IP it owned or controlled merging them as part of the CFIUS divestment transaction.

23.     Plaintiff had an expectation after applying for CFIUS certification its name and brand would be protected from being misappropriated.

**Sep 9 Joint CFIUS Certification Submission**

24.     On September 9, 2020, Plaintiff properly submitted notice to CFIUS under Section 2(d)(i) of its intent to bid for TikTok's U.S. operations. (**Ex. 2**).

25.     The CFIUS submission as required under § 800.401 was concurrently provided to Bytedance CEO, Defendant Zhang and head of Public Relations and Global Media, by email which stated in part:

> From: Brad Greenspan bgreenspan@tiktokglobalnetwork.com
> To:"cfius@treasury.gov"<cfius@treasury.gov>,"cfius.cms@treasury.gov"
>       <cfius.cms@treasury.gov>
> Cc: "globalmedia@bytedance.com" <globalmedia@bytedance.com>,
> "yiming.zhang@bytedance.com" yiming.zhang@bytedance.com
>
> Date: 09/09/2020 2:29 PM
>
> Subject: Sec. 2.(d)(i) notification
>
> ATTN: CFIUS
>
> Cc: Mr. Yiming Zhang, CEO ByteDance Ltd

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

Under Sec. 2.(d)(i), In regards to the U.S. Presidential E.O. Issued on: August 14, 2020. Under section 721 of the Defense Production Act of 1950, as amended (section 721), 50 U.S.C. 4565 Order Regarding the Acquisition of Musical.ly by ByteDance Ltd

**Plaintiff Assets Included Its Management Leadership**

26.     Plaintiff also believed it had a significant advantage as a result of the management it had recruited to participate in the CFIUS certification submission process and ultimately operate the post-acquired TikTok U.S. assets.

27.     The chief executive of TikTok Global LLC is the same seasoned internet veteran who led TikTok's predecessor in 2020, Brad Greenspan. Greenspan, with his extensive background in social media and online video technology, arguably possessed the most qualified experience among Americans to manage a divested TikTok U.S. platform in 2020.

28.     At just 27, Greenspan founded a public company that grew to become the eighth largest U.S. website property and turned cash flow positive by the end of 2001. As Chairman/CEO of eUniverse, Inc., he expanded its online audience from under 1 million users in 1999 to over 49 million by 2001.

29.     After the dot-com bubble burst in 2001, serving as Chairman/CEO of Myspace.com's parent company, eUniverse underwent significant restructuring. This included discontinuing its online music CD ecommerce division and launching new online content and community business units, which boosted revenue from $1.8 million in fiscal year 2000 to $16 million in fiscal year 2001, reaching cash flow positivity, and then growing to $33 million in fiscal year 2002 and $66 million by fiscal year 2003.

30.     A 2001 Gartner Report credited Greenspan with developing a unique proprietary "Secret Successful" methodology for Internet ad sales—a process that has since evolved into the

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

performance-based advertising model used in over 90% of all online ad purchases annually.

31.     Greenspan was also a pioneer innovating a social network in the Metaverse, receiving the first trademark for his LivePlace product on July 4, 2000, with a description that encompassed many of the traits now associated with what the industry calls the Metaverse. The head developer of LivePlace went on to create hugely popular PokemonGo mobile game.

32.     While at the helm of eUniverse, he became the only American to create three different websites that topped their respective categories. The last of these was Myspace.com, a fully owned social network that was launched in August 2003 and quickly became number one social network by January 2004.

33.     At the close of 2005, eUniverse and Myspace were sold for $650 million in cash by News Corporation which was all time high stock price cashing out over 100 institutional investors.

34.     Displaying his acumen further, Greenspan rolled out BroadWebAsia, acquiring controlling stakes in several Chinese video websites and constructing a network that lured over 60 million unique visitors per month across China.

35.     His victories caught the attention of Major League Baseball (MLB), which picked him to spearhead an international joint venture creating and operating MLB's first official website in China. His venture culminated in securing an exclusive license from MLB's Advanced Media to launch MLB.cn in 2008—the first American-controlled Chinese company to obtain an online video streaming license from the People's Republic of China.

36.     Greenspan's experience in Singapore, where ByteDance runs a significant portion of TikTok U.S., provides him with valuable connections that would have benefit post-acquisition

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

operations.[5]

37.     Additionally, Greenspan's pioneering efforts in livestreaming and online video—evidenced by his launch of the innovative LiveVideo.com video social network in 2007 and his role as co-founder of the video news site Liveleak.com—further bolstered his qualifications to expand and manage TikTok U.S.

**Plaintiff Submits Its Sep 14 CFIUS Compliant Transaction**

38.     On September 14, 2020, at 5:04 AM, with clear evidence of its genuine  intent, the Plaintiff notified CFIUS, ByteDance, and the ByteDance CEO that TG had provided ByteDance with an executable Asset Purchase Agreement for $33.3 billion dollars designed to fully transfer ownership and control of TikTok's U.S. operations to an American company to allay the national security concerns that had led to the Executive Order. (**Ex. 3**).

**The Sham Partnership**

39.     In the intricate dance of corporate maneuvers, ByteDance was poised to gracefully advance to the next step, finalizing the intricate deal architected by the Plaintiff that satisfied the intricate demands of CFIUS.

40.     Despite the Plaintiff being the only interested buyer to strictly follow all CFIUS procedures—and having transmitted a fully executable acquisition agreement at 5:04 AM—at around 9:00 AM est Treasury Secretary Mnuchin appeared on CNBC and announced that Oracle had been selected as the "trusted technology partner" for TikTok's U.S. operations.

---

[5] In 2010, Greenspan was recruited by the Singapore Government and awarded an incubator fund in partnership with Singapore's National Research Foundation (NRF), subsequently operating a Singapore based incubator and making investments in Singapore digital media startups that contributed to the growth of Singapore's now thriving digital innovation ecosystem.

41.     Then, in a move as unexpected as a twist in a dramatic ballet, Mnuchin sprang into the debate and unveiled his own version of "TikTok Global." In a calculated strategy that seemed designed to outmaneuver CFIUS, he declared matter-of-factly, that he had received a commitment

> "TO MAKE TIKTOK GLOBAL AS A U.S. HEADQUARTERED COMPANY WITH 20,000 NEW JOBS." (**Ex. 4**).

42.     The CFIUS approval deadline had passed as of September 14, 2020, placing the Plaintiff in an extremely advantageous position. However, before the Plaintiff could introduce itself to the public and discuss its $33 billion acquisition agreement, its novel branding strategy was misappropriated, abruptly usurped and paraded on national television as if it belonged to another.

43.     This clever maneuver provided ByteDance with an alternative path, one that neatly sidestepped the strict requirements of FIRRMA. Rather than being forced into a sale, ByteDance was offered the chance to form a sophisticated partnership—a strategic alliance involving cloud storage with tech giants Oracle and Microsoft, further bolstered by retail powerhouse Walmart.

44.     The landscape was dramatically altered due to Mnuchin's deceptive portrayal on CNBC on September 14. His false representation not only caused confusion within CFIUS about the earlier "TikTok Global" submissions from the Plaintiff but also introduced a completely different version of "TikTok Global" to the public.

45.     The CNBC concocted origin story for Mnuchin's "TikTok Global," was quickly echoed by all major media outlets, thereby propagating a falsehood across America via a vast echo chamber. This was achieved through a flagrant conspiracy that involved suppressing the Plaintiff's CFIUS submission while concurrently promoting a bogus cloud agreement announced on television designed to misappropriate the Plaintiff's corporate name.

46.     For example, despite the Plaintiff being the only bidder with a CFIUS certification, the key news sources covering the EO after the Plaintiff's CFIUS submission on September 14, 2020: ABC, CNBC, TechDirt.com, Reuters, 5News, Economic Times, NYTimes, Washington Post, and Bloomberg [6] (**Ex. 5**) all cite Mnuchin's Sep 14 "TikTok Global" while omitting mention of Plaintiff's transaction.

---

[6] https://abc17news.com/money/2020/09/14/does-tiktoks-deal-with-oracle-avert-a-us-ban/

"Silicon Valley's most prominent VC firm had a banner week: $9 billion in IPO shares while helping TikTok negotiations" CNBC September 18, 2020 by Ari Levi.

"The TikTok Oracle Grift: Insiders Admit They Went Hunting For A Tech Company The President Liked " TechDirt.com  Sep 16th by — Mike Masnick"

"ByteDance says TikTok Global plans public offering" Reuters, Sep 20, 2020, Reuters Staff"

"Walmart to acquire 7.5% stake in TikTok; new U.S. public company to be formed", 5 news, Sep 20, 2020

"Donald Trump celebrates TikTok deal that falls short of his key demands", Economic Times, Sep 20, 2020 by By Nick Wadhams and Shelly Banjo

"ByteDance plans TikTok IPO to win U.S. deal as deadline looms: sources", Reuters, Sep 15, 2020 By David Shepardson, Stephen Nellis and Echo Wang

https://www.cnbc.com/2020/09/17/politics-of-tiktok-deal-pollutes-intent-of-data-security-expert-says.html  Sep 17, 2020 by Roy Choudhury

"Backlash Grows to TikTok-Oracle Deal" https://www.nytimes.com/2020/09/16/technology/tiktok-oracle-opposition.html  Sep 16, 2020 by Ana Swanson

https://www.msn.com/en-us/news/politics/oracle-tiktok-bid-to-get-national-security-finding-today/ar-BB194f3H Bloomburg, Sep 17, 2020

"Oracle's TikTok Bid Leaves Open Some U.S. Security Concerns", Bloomburg, Sep 16, 2020, by Saleha Mohsin, Nick Wadhams and Jennifer Jacobs

"TikTok proposes to add new U.S. headquarters and 20,000 jobs to win over Trump"

"Treasury Secretary Mnuchin confirms details in new offer for Oracle from TikTok" Washington Post, Sep 14, 2020 by Jay Greene"

47.     The strategy was executed with ruthless precision, leveraging the nationwide reach of Mnuchin's CNBC announcement to deliberately undermine a valid, CFIUS-certified acquisition agreement for TikTok U.S.

48.     Ultimately, the Defendants' daring plan to let a co-conspirator seize the Plaintiff's brand before its proper unveiling—as the sole, timely, and fully compliant CFIUS acquisition agreement—dealt a catastrophic blow to the Plaintiff.

49.     This calculated conspiracy inflicted severe antitrust injury upon the Plaintiff, brutally barring them from acquiring TikTok's U.S. operations despite their submission of two legitimate offers, fully in line with all CFIUS requirement

50.     ByteDance continued to pursue the non-compliant Oracle partnership, to retain control of TikTok's U.S. operations in violation of the Executive Order.

**Sep 15, 2020 Plaintiff Notifies Oracle Of CFIUS Submission**

51.     After September 14, 2020, instead of working with ByteDance and CFIUS to close its acquisition, Plaintiff was forced to make an unexpected pivot, and in emergency fashion, attempt to protect its brand identity,  create public awareness of the misappropriation Plaintiff had fallen victim to, and create public awareness   of its pending, CFIUS-compliant offer.

52.     Plaintiff  took decisive action betting it could utilize its CFIUS-certification edge, fully aware that Oracle, Microsoft, and Walmart lacked this critical certification.

53.     On September 15, Plaintiff put Defendants  on notice its covered transaction was protected under CFIUS § 800.213(d)[7] thru contacting Oracle President Safa Catz, stating (**Ex. 6**):

> "Hello Ms. Catz,
>
> I was the Founder of Myspace and Chairman/CEO of its publicly traded

---

[7] § 800.213(d) states Any other transaction, transfer, agreement, or arrangement, the structure of which is designed or intended to evade or circumvent the application of section 721.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

Parent company, eUniverse, Inc.

-see CNBC Maria Bartiromo video interview for quick color/background at www.mypalisadescapital.com/about

Today I am contacting you as the CEO of TikTok Global Network Inc. ('TGN') a company that has timely submitted the information and materials to get CFIUS approval of a "proposed sale" under the President's August 14, 2020 E.O. that "effectuates" (see pages 4-7 of attached which is a portion of the asset acquisition agreement for your evaluation) the ordered "divestment". (see Sep 9, 2020 CFIUS & Sep 14, 2020 submission, pg. 1 & 10 of attached pdf)

It would be great to work with Oracle accomplishing the same goal the President's two related executive orders seek to facilitate. Further, I think that in the long run, Oracle and the United States would be better served partnering with an experienced operator of business to consumer social media assets who is a U.S. Citizen and under a structure that truly divests the assets per the President's E.O.

TGN would certainly be willing to commit to exclusively use Oracle security, cloud and data storage services (as far as outside service providers or partners for those types of products). TGN would also guarantee the same rates/consideration that Oracle has been offered to get the benefit of from ByteDance.

(also I plan to contribute two additional video and livestreaming technology companies with large audiences I control concurrently with the acquisition of TikTok U.S. assets, so there would be even more exciting growth prospects for all involved parties! :) )

(1) Can you confirm Oracle is willing to provide the same services on same pricing its agreed

to provide to ByteDance for satisfying CFIUS* if TGN is successful getting Sec(d)(ii)**approval? ( under CFIUS review since September 14, 2020)

(2) In addition to strictly the aforementioned service provider role, TGN would welcome Oracle's joining and participating as part of the TGN investor group for any amount up to $10,000,000,000 cash? (But investment by Oracle would not be required to participate in the security/data safety/storage capacity Described in part (1)

(3) Please also consider an additional way to work together which would be for Oracle to inform ByteDance it will only be willing to provide its services for the TikTok U.S. assets (as defined by the Aug 6/14 E.O.s) thru a U.S. company they have been transferred or sold to as part of a "divestment", including thru the structure Oracle has now become aware that TGN is/has offered to ByteDance.

(Unfortunately, the last second effort by ByteDance to offer up a non "divestment" solution involving Oracle as part of its involved parties may or could distract, slow, or prevent ByteDance from fully and fairly considering the aforementioned Sep 14, 2020 Asset Purchase Agreement (which Oracle is now aware of). Based on this new information, please consider that Oracle under the non "divestment" proposal to CFIUS may be unwittingly being used by ByteDance or its affiliates like Sequoia China to contravene Aug 14 E.O. section 2(f) which states (f) Any transaction or other device entered into or employed for the purpose of, or with the effect of, evading or circumventing this order is prohibited. Or Aug 6 E.O Sec 2(a),(b) Sec. 2. (a) Any transaction by a United States person or within the United States that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate the prohibition set forth in this order is prohibited. (b) Any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited. "

"***Sec.2. Actions Ordered (d)ByteDance shall not complete a sale or transfer under section 2(b) to any third party: (i) until Byte Dance notifies CFIUS in writing of the intended recipient or buyer; and (ii) unless 10 business days have passed from the notification in section 2(d)(i) and CFIUS has not issued an objection to ByteDance. "

54.     Plaintiff did not get any response or reply from Oracle to its September 15, 2020 notification letter sent to President Catz.

**2020 Congressional Notifications**

55.     The realization dawned that ByteDance was steering towards an unconventional partnership with Oracle, defying the Executive Order and retaining control of TikTok's U.S. operations.

56.     Plaintiff briefed select members of Congress such as Senators Hawley and Rick Scott of Florida on or around September 17, to inform them about its CFIUS submissions and the actions taken by the Defendants to scuttle Plaintiff's acquisition.  These credible individuals will serve as patriotic sources of truth in this matter. (**Ex. 7**).

57.     Bytedance publicly endorsed Mnuchin's "TikTok Global" venture thru a message titled "An update for our TikTok family"  (**Ex. 8**)  sent to its over hundred million U.S. users on

September 20, 2025, stating:

> "We're pleased that today we've confirmed a proposal that resolves the Administration's security concerns and settles questions around TikTok's future in the US. Our plan is extensive and consistent with previous CFIUS resolutions, including working with Oracle, who will be our trusted cloud and technology provider responsible for fully securing our users' data. We are committed to protecting our users globally and providing the highest levels of security. Both Oracle and Walmart will take part in a TikTok Global pre-IPO financing round in which they can take up to a 20% cumulative stake in the company. We will also maintain and expand the US as TikTok Global's headquarters while bringing 25,000 jobs across the country. "

58.     In sending the message Defendants were concealing crucial information from CFIUS regarding Plaintiff's prior submissions and agreements Bytedance was part of.

59.     Plaintiff's efforts became increasingly more difficult as it now needed reporters it was in contact with to understand the complexities and legal implications of what appeared to be Defendants' CFIUS 2(d)(i) violations.

**Plaintiff TG's Sec 2(d)(ii) Approval**

60.     On September 23, 2020 CFIUS Sec (2)(d)(ii) approval was granted for the certification information provided to CFIUS on September 9, 2020.

61.     Increasingly concerned with the lack of progress, Plaintiff submitted an updated Asset Purchase Agreement to ByteDance on September 24th,  increasing the deal value to $58 billion (**Ex. 9**)  thru:

- • $36 billion in cash;
- • $7.5 billion in guaranteed advertising purchases;
- • $5 billion in prepaid advertising credits;
- • $5.5 billion in employee stock options; and
- • $4 billion in assumed liabilities

62.     Between September 15-30, Plaintiff affiliates sent emails to journalists to inform them about the CFIUS  "TikTok "proposed sale" agreement under review by ByteDance & Federal

Government.

63.     September 27th Plaintiff contacted Defendant TikTok Inc.'s Chief Legal Officer directly (**Ex. 10**),

> "Mr. Erich Andersen Chief Legal Officer TikTok Inc.
> Cc: John E. Hall Megan Keegan
> Globalmedia@bytedance.com ir@bytedance.com
>
> Attn: Please forward a copy of this letter to ByteDance LTD CEO Mr. Yiming Zhang.
>
> Dear Mr. Andersen,
>         After TikTok Global Network's (TGN) $33.3 billion dollar offer to acquire Tiktok U.S. assets from ByteDance LTD (BD), delivered by email at 2:06am est on September 14, 2020 , we were surprised to learn that BD later that day put out a statement agreeing to sell 100% of the non-China TikTok operations and assets.
>
> TGN seeks your urgent full consideration and that of TikTok Inc. owner BD to agree to effectuate the August 14, 2020 E.O. by selecting one of the ready to be consummated Asset Purchase Agreements TGN is offering herein for either $33.3 billion dollar (U.S. assets less China) or $58.0 billion dollars (Global assets less China)."

64.     Page 1 of the email at footnote "1", provided an explicit CFIUS notice:

> "CFIUS was notified of the potential buyer (as defined in August 14, 2020 E.O.) on September 9, 2020 in writing, previously reviewed the structure of the offers made today on September 14th, and did not assert any .Sec 2.(d)(ii) objections to either in the 10 business days following each. (see Exhibit 5.2 of each attached agreement)"

Plaintiff again raised the benefits of its CFIUS approved executable agreement:

> "The opportunity here for BD is to use the fortuitous timely executable agreement to possibly nip in the bud having the Judge rule on the facts, but certainly take the actions necessary during the day to work with the DOJ and CFIUS to stop the ban from going in effect at midnite thru gaining their recognition and acceptance of the fact BD has effective immediately on entering into one of the TGN Asset Purchase Agreements, done everything needed with the next deadline being providing a certification of divestment on November 12, 2020.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

1. Buyer & Agreement structure have already been reviewed by CFIUS without objections.[1]
2. Offers are full definitive buyer executed agreements, becoming bona fide binding agreements subject only to BD counter signing. " (Id.)

65.     ByteDance and CEO Yiming Zhan, despite the best efforts of Plaintiff, refused to accept either of the two genuine buyout offers made.

66.     Plaintiff believes that ByteDance's refusal to cooperate was and continues to be not only harmful to their business interests but also detrimental to national security concerns raised during the CFIUS review process. As a result, they are determined to pursue legal action for justice.

67.     ByteDance and Oracle engaged in an unlawful conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The victims of this grand scheme was the Plaintiff, whose aspirations to acquire TikTok's U.S. operations were dashed. Their coordinated actions constitute a violation of antitrust laws through:

**Market Allocation and Division:** ByteDance maintained control over TikTok's U.S. operations through a sham "partnership" structure, effectively allocating the U.S. short video social media market between itself and Oracle while excluding other potential acquirers like Plaintiff.

**Group Boycott**: ByteDance conspired to boycott TG's legitimate acquisition offers. Despite Plaintiff TG submitting offers of $33.3 billion and later $58 billion in compliance with all CFIUS requirements, ByteDance refused to respond to or negotiate with TG, instead pursuing the non-compliant Oracle partnership. This boycott was designed to prevent TG from competing for the acquisition of TikTok's U.S. operations.

**iii. Bid Rigging:** ByteDance coordinated with Mnuchin to manipulate the CFIUS review process and ensure Oracle's selection as the "trusted technology partner" while suppressing TG's compliant $33.3 billion bid submitted on September 14, 2020

**<u>iv. Concerted Refusal to Deal</u>**: ByteDance and Oracle engaged in a concerted refusal to deal by refusing to respond to or negotiate with TG regarding its CFIUS compliant acquisition agreements for consideration totaling $33.3 billion and later $58 billion as required under § 800.401, instead pursuing the non-compliant Oracle partnership in furtherance of their conspiracy.

**The 2022 "No TikTok On Government Devices Act**

68.     On December 14, 2022, President Biden signed into law the "No TikTok on Government Devices Act," which states in Sec 2(a)(1) that TikTok is a "covered application," referring to the social networking service TikTok or any successor application or service developed or provided by ByteDance Limited or an entity owned by ByteDance Limited. Sec 2(b) details a "Prohibition On the use of TikTok."

69.     However, the Defendants have taken controversial actions that seem to flout Federal law, yet again including tapping into their strategic cloud partner Oracle among others, which appears to be a strategic move.  Moreover, the Defendants have not registered their lobbying activities in a timely manner under FARA regulations, which violates a clear statute in place to protect the American public from corruption in U.S. politics and the influence of foreign government-controlled or affiliated companies or unincorporated associations.

70.     Specifically, ByteDance must provide evidence of how it was able to secure its CEO's attendance at the President's January 20, 2025 inauguration just 72 hours after its emergency appeal to the Supreme Court was denied and its ban upheld, without making any FARA lobbying disclosures (**Ex. 11**).

71.     The transaction was still open until the Completion date under § 800.206 occurred, at which point the ownership interest transferred to the Plaintiff under the agreement Plaintiff certified was on the table and actionable with Bytedance.

72.     Plaintiff and its predecessor through filing this complaint further rescinds the CFIUS submitted acquisition agreements it executed and terminates these agreements for non-performance by the Defendants.

73.     Plaintiff spent significant time contacting multiple senior executives at ByteDance to bring them up to speed on their proposed rescue buyout plan, which had been previously endorsed by the CEO and IR department during the CFIUS application process.

74.     Despite this, ByteDance has remained resolute in their decision, leaving the Plaintiff with no choice but to take legal action.

75.     TG has endured tremendous damages including crushing lost profits and priceless business opportunities that would have flowed naturally from a successful acquisition of TikTok's U.S. operations.

76.     Plaintiff TG is unequivocally entitled to recover these losses.

77.     Their legitimate bids, compliant with all CFIUS requirements, were ignored, leaving them to bear the brunt of antitrust injury.

78.     It is evident that the alleged conduct of ByteDance and Oracle has not only harmed competition more broadly by maintaining ByteDance's control over TikTok in violation of national security directives aimed at increasing competition and protecting U.S. user data. but also deprived consumers of the myriad benefits that come with robust competition in the vibrant world of social media.

79.     Defendants also remain in direct violation of the U.S. Supreme Court's order upholding the Federal ban, revealing a concerning disregard for legal authority.

80.     It is clear that Plaintiff now has no choice but to reclaim what was lost: an opportunity to transform online engagement dramatically while ensuring those who perpetrated

this subterfuge are held accountable.

## FIRST CAUSE OF ACTION
### (Section 1 of the Sherman Act, 15 U.S.C. § 1)

81.     Plaintiff incorporate by reference paragraphs 1-80 above as if fully set forth herein.

82.     ByteDance and Oracle colluded in a ruthless scheme that shackled trade by ruthlessly blocking legitimate acquisition offers for TikTok's U.S. operations.

83.     This calculated ploy preserved ByteDance's grip on the platform—an overt defiance of national security directives—while stubbornly refusing to sell equity interests to American citizens.

84.     Defendant blatantly is now ignoring a Supreme Court appeal ban, while crushing competition in the social media arena, after blatantly sidestepping required CFIUS procedures.

85.     In an even graver act, ByteDance and Oracle plunged into an illegal conspiracy, flagrantly breaching Section 1 of the Sherman Act, 15 U.S.C. § 1. As the law states, "Every contract, combination … or conspiracy, in restraint of trade or commerce … is declared to be illegal." Their actions were nothing short of a deliberate assault on free competition.

86.     Specifically, ByteDance and Oracle conspired with cold precision to:

•     Skirt proper CFIUS divestment procedures by fashioning a sham "partnership" in place of a bona fide divestment mandated by Executive Order;
•     Deliberately muzzle and hide TG's bona fide $33.3 billion and $58 billion acquisition offers, which had faithfully followed all CFIUS protocols;
•     Strategically collude with Mnuchin to herald Oracle as the "trusted technology partner," all the while artfully concealing TG's pending, fully compliant CFIUS bid;
•     Then brazenly appropriate Plaintiff's IP to mislead viewers on CNBC—falsely declaring that Oracle and ByteDance had sealed a deal to establish 'TikTok Global'—while furtively covering up that the CFIUS certifications submitted by Plaintiff and ByteDance had been the true catalyst for the Treasury Secretary's misguided "TikTok Global" hoax;
•     Impose artificial obstacles designed to suffocate legitimate acquisition offers, ensuring ByteDance retained its oppressive control; and
•     Undermine competition in the social media market by allowing ByteDance to hold

onto TikTok's U.S. operations rather than divesting to an independent and competitive rival.

87.     These improper cloud "security" agreement and similar arrangements designed to bypass CFIUS wreaked havoc, inflicting serious antitrust injuries upon TG and poisoning market competition.

88.     This agreement was not merely a document signed in secrecy—it was a meticulously engineered maneuver, shrouded in subterfuge, designed to trap TikTok's future by perpetuating ByteDance's monopoly over its U.S. operations, all under a façade of legal compliance.

89.     This conspiracy struck Plaintiff with devastating force, obstructing their ability to complete the CFIUS certification divestment schedule and acquire TikTok's U.S. operations— even as they presented legitimate, compliant offers.

90.     Mnuchin's revelation of an impostor unincorporated "TikTok Global" was a calculated act of deception, suppressing TG's CFIUS-compliant bid despite it being the only transaction with an executable final agreement, while championing Oracle's non-compliant deal.

91.     Plaintiff thru one or more intermediaries strategically informed top media news outlets directly thru their top media journalists of the $33.3 then $58 billion dollar CFIUS acquisition agreements between September 14th and months end including Ana Sorenson and Paul Mozur at the New York Times,  Reporters Zoe and Casey at the Verge ,  Nick Wadhams at Bloomberg, Clare Duffey at CNN , D. Whately at Business Insider, Bobby Allyn at NPR, Brian Fung at CNN, and Arbel Tarbel at Thomson Reuters, among others (**Ex. 12**).

92.     There was immediate and significant interest from almost all of the reporters contacted.

93.     For example, NY Times reporter Ana Sorenson initially responded with enthusiasm but became confused when she discovered conflicting information about TikTok Global's $33.3 billion deal pending before CFIUS. The confusion stemmed from ByteDance directing Mnuchin's announcement of TikTok Global while suppressing Plaintiff's September 14, 2020 CFIUS acquisition agreement. Consequently, reporters moved on to different stories as they couldn't verify the details. (**Ex. 113**).

94.     The confusion caused by ByteDance's actions led reporters to abandon the story because: a) They could not verify the Plaintiff's alleged September 14, 2020, 5:04 AM $33.3 billion acquisition agreement under review by CFIUS. b) ByteDance was directing attention to Mnuchin's announcement of TikTok Global. c) The original Plaintiff's agreement was being suppressed.

95.     Reporters could confirm the story of TikTok Global that began later that same day when the Treasury Secretary announced a new deal involving ByteDance and adding 25,000 jobs to the U.S., which included public announcements by Oracle Corp, Walmart, and Microsoft.

96.     Even after Plaintiff increased its offer with a new acquisition agreement submitted to CFIUS and ByteDance on September 24, 2024, Bytedance's September 14th actions continued to negatively impact press coverage for the Plaintiff.

97.     For instance, Plaintiff attempted again at the end of September with a September 28 letter shared with The Information "Subject: ByteDance leverages new $58 billion buyout offer to win injunction", but it too met with the same demise. (**Ex. 11**).

98.     Plaintiff suffered damages from the Sep 14th CNBC misappropriation when attempting to expand its investor syndicate. For instance, the Plaintiff reached out to a potential investor on September 9, 2020, publicly traded SPAC Pershing Square Tontine Holdings, Ltd, with whom they had no prior relationship. The Pershing SPAC failed to respond since they

certainly encountered Mnuchin's Sep 14 CNBC "TikTok Global" during their evaluation of Plaintiff's proposal, rendering Plaintiff's introduction letter perplexing and any credibility the Plaintiff had hoped to establish with the Pershing SPAC irreparably damaged. (**Ex. 14**).

99.     Among their many anticompetitive tactics was the creation of a cleverly disguised subcontracting agreement under the guise of an Oracle "partnership" that allowed ByteDance to unrelentingly maintain control of TikTok's U.S. operations, while feigning adherence to the Executive Order.

100.     Alternatively or additionally the conspirators also employed an insidious tactic known as Complementary Bidding.

101.     Oracle's "trusted technology partner" proposal was merely a sham—a false divestment designed to project an illusion of compliance while permitting ByteDance to unremittingly hold the reins.

102.     This vicious anticompetitive conduct has directly sapped competition in the social media market by:

- Crushing legitimate acquisition offers for TikTok's U.S. operations;
- Solidifying ByteDance's tyrannical control of the platform in direct defiance of national security mandates;
- Suppressing healthy competition in the social media market;
- Evading necessary CFIUS procedures with reckless abandon;
- Engineering artificial barriers to entry; and
- Depriving consumers of the fruits of genuine competitive innovation.

103.     Agreements between competitors to allocate markets, refuse to deal, or rig bids are per se violations of Section 1 of the Sherman Act.

104.     As a direct result of ByteDance's unscrupulous interference, TG has suffered catastrophic damages.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

105.     These include crippling lost profits and the destruction of valuable business opportunities that would have naturally ensued from a successful acquisition of TikTok's U.S. operations had the process been allowed to proceed unobstructed , which TG is unequivocally entitled to recover.

## SECOND CAUSE OF ACTION
### (Tortious Interference with Advantageous Business Relationship)

106.     Plaintiff incorporates by reference paragraphs 1-80 and 82-105 above as if fully set forth herein.

107.     TG had a reasonable expectation of economic advantage from its bid to acquire TikTok's U.S. operations, having followed all required CFIUS procedures and submitted legitimate, fully-funded offers.

108.     TG's offers represented true divestment solutions that would have fully addressed the national security concerns that prompted the Executive Order, providing a clear path forward for TikTok's U.S. operations to continue under new ownership.

109.     TG also possessed the deep expertise necessary to successfully acquire and operate TikTok's U.S. operations.

110.     Its team included experienced executives with a proven track record in the tech industry.

111.     On September 9, 2020, TG took the formal step of submitting notice to CFIUS under Section 2(d)(i), signifying its intent to bid for TikTok U.S..

112.     This was followed by the submission of formal acquisition offers fully executable to ByteDance on September 14, 2020, and September 24, 2020, illustrating a clear and deliberate commitment to the acquisition process. (**Ex. 3** and **Ex. 9**).

113.    ByteDance, acutely aware of TG's anticipation of economic gain, engaged in deliberate acts of interference. This included blatantly ignoring TG's properly submitted bids, actively pursuing a non-compliant transaction with Oracle, and strategically concealing TG's bids from public disclosure.

114.    Furthermore, ByteDance coordinated with Secretary Mnuchin to bypass the established CFIUS procedures, undermining the integrity of the process

115.    ByteDance's interference was both intentional and improper, driven by a motive to retain control over TikTok's U.S. operations in blatant violation of the Executive Order.

116.    This self-serving agenda was in stark contrast to the public interest, which prioritized national security and the principles of fair competition.

117.    As a direct consequence of ByteDance's improper interference, TG has suffered substantial damages. These include significant lost profits and valuable business opportunities that would have naturally flowed from its successful acquisition of TikTok's U.S. operations, had the process proceeded without obstruction. TG is entitled to recover the full extent of these losses.

**THIRD CAUSE OF ACTION**
**(Unjust Enrichment)**

118.    Plaintiff incorporate by reference paragraphs 1-80, 82-105 and 107-117 above as if fully set forth herein.

119.    ByteDance has unjustly reaped financial advantages by maintaining control over TikTok's U.S. operations through a strategic partnership with Oracle, all while sidestepping the genuine divestment mandated by the Executive Order.

120.    This maneuver allowed ByteDance to continue its grip on the lucrative TikTok market in the United States.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

121.    ByteDance secured this benefit by willfully dismissing TG's legitimate acquisition proposals and deftly circumventing the procedural requirements of the CFIUS.

122.    Despite having ample opportunities, Defendants ByteDance and its CEO Mr. Zhang both copied on the September 9 and 14th, 2020 CFIUS submissions never once demanded a termination of the definitive agreement, CFIUS certification, or CFIUS approvals. ByteDance's head of Public Relations was equally in the loop, receiving the same critical data.

123.    Even later after ByteDance's U.S. lawyers got their hands on copies of the CFIUS certification from the Plaintiff, neither did ByteDance's attorneys ever dare to request to terminate or cancel the CFIUS application and certification its client was a party to. And why would they?

124.    Plaintiff's CFIUS certification likely represented the sole legally certified, CFIUS-approved bidder for ByteDance and TikTok in the high-stakes arena of 2020. Plaintiff's CFIUS application was ByteDance's fall back option or alternatively was a bargaining chip used by ByteDance to optimize its negotiations with Oracle.

125.    The actions of ByteDance were executed with deliberate bad faith and an ulterior motive to persist in exercising control over TikTok's U.S. operations, thereby flouting the directives of the Executive Order.

126.    By holding onto TikTok's U.S. operations, ByteDance has continued to draw substantial profits, tapping into the vast revenue stream generated by American users.

127.    This persistent profit accrues despite the unfulfilled divestment stipulation outlined in the Executive Order.

128.    Allowing ByteDance to retain the benefits gained through such improper conduct would be inequitable.

129.    ByteDance's retention of these advantages comes at the expense of TG, which was

unjustly deprived of the opportunity to acquire TikTok's U.S. operations, despite having submitted legitimate offers that complied with all CFIUS requirements

130.    As a consequence of this unjust enrichment by ByteDance, TG is entitled to restitution in an amount to be determined at trial, but no less than the substantial value of TG's $58 billion offer for TikTok's U.S. operations.

**FOURTH CAUSE OF ACTION**
**(Florida Deceptive and Unfair Trade Practices Act)**

131.    Plaintiff incorporate by reference paragraphs 1-80, 82-105,107-117 and 119-130 above as if fully set forth herein.

132.    ByteDance falsely portrayed the Oracle partnership as a genuine divestment of TikTok's U.S. operations.

133.    In reality, it was a cunning scheme designed to retain control while giving the illusion of compliance with the Executive Order.

134.    Mnuchin's unexpected announcement was a brand mugging on a public stage, leaving a bitter taste in the Plaintiff's mouths.

135.    Plaintiff's fully compliant CFIUS bid had been deliberately concealed and suppressed in favor of promoting Oracle's non-compliant proposal.

136.    The Oracle proposal did not present a true divestment as required by the Executive Order, instead suggesting a partnership deal that would enable ByteDance to retain control.

137.    This deliberate misrepresentation was crafted to mislead CFIUS, the general public, and potential bona fide buyers such as TG.

138.    ByteDance was fully aware that the Oracle partnership did not fulfill the criteria for a genuine divestment as mandated by the Executive Order.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

139. ByteDance's false representations were of significant importance because they pertained to the core nature of the transaction and its compliance with the Executive Order's stipulations.

140. As a direct and proximate result of ByteDance's deceptive business practices, TG has suffered substantial damages, including: (a) Loss of profits (b) Loss of business opportunities (c) Reputational damage, and (d) Legal and administrative costs

141. Plaintiff, including predecessors TikTok Global Network Inc. and TikTok Global Inc., were damaged by ByteDance's deceptive conduct.

142. Plaintiff will be further damaged without intervention by this honorable Court and its just legal relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court: (1) Enter judgment in their favor and against TikTok Inc., ByteDance, and Yiming Zhang; (2) Award compensatory damages of not less than $58 billion; (3) Award Plaintiff punitive damages; (4) Award treble damages pursuant to the Sherman Act; (5) Grant preliminary and permanent injunctive relief requiring ByteDance to divest TikTok's U.S. operations to Plaintiff; (6) Award Plaintiff reasonable attorneys' fees and costs; and (7) Award Plaintiff pre-judgment and post-judgment interest to the maximum extent allowed by law. Alternatively, Plaintiff should become the successor to any U.S. assets the banned companies abandon. Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 670-8989

**DATED:  April 3, 2025**                          Respectfully Submitted,

**REINER & REINER, P.A.**
*Counsel for Plaintiff*
9100 South Dadeland Blvd., Suite 901
Miami, Florida   33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
dpr@reinerslaw.com; eservice@reinerslaw.com

By: _____
   **DAVID P. REINER, II, ESQ.**; FBN 416400