## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 0:25-cv-60645-AHS

TIKTOK GLOBAL LLC,

      Plaintiff,

vs.

BYTEDANCE LTD., TIKTOK INC. and
YIMING ZHANG,

      Defendants.

_____/

### DEFENDANTS BYTEDANCE LTD. AND TIKTOK INC.'S[*]
### MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)
### AND INCORPORATED MEMORANDUM OF LAW

---

[*]Defendant Yiming Zhang has not been served with the summons or Complaint.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.      Plaintiff Lacks Standing ............................................................................................ 4

II.     Plaintiff Fails to State a Claim. ................................................................................ 7

        A.      Plaintiff's antitrust claim fails. ............................................................................ 7

        B.      Plaintiff's tortious interference claim fails. ..................................................... 10

        C.      Plaintiff's unjust enrichment claim fails. ........................................................ 13

        D.      Plaintiff's consumer protection claim fails. .................................................... 14

III.    Plaintiff's Claims Are Time-Barred ......................................................................... 16

IV.     Plaintiff's Complaint Should Be Dismissed With Prejudice. ................................. 18

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
  416 F.3d 1242 (11th Cir. 2005) .........................................................................14

*Andrew Greenberg, Inc. v. Svane, Inc.*,
  36 A.D.3d 1094 (N.Y. App. Div. 2007) ...........................................................17

*Apex Hosiery Co. v. Leader*,
  310 U.S. 469 (1940)............................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................6, 7

*Atlantic Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990).........................................................................................10

*Blessinger v. Aecom*,
  526 F. Supp. 3d 1319 (S.D. Fla. 2021) ............................................................16

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005) ...........................................................................5

*Boon Rawd Trading Int'l Co., Ltd.l Co., Ltd. v. Paleewong Trading Co., Inc.*,
  688 F. Supp. 2d 940 (N.D. Cal. 2010) .............................................................17

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)..........................................................................................10

*Buckley v. Moore*,
  2021 WL 3173185 (S.D. Fla. July 26, 2021) ..................................................16

*BWG Design Ltd., Inc. v. Serv. Am. Corp.*,
  2010 WL 5014289 (S.D. Fla. Dec. 3, 2010) ....................................................11

*Car Body Lab Inc. v. Lithia Motors, Inc.*,
  2021 WL 2658693 (S.D. Fla. June 22, 2021) ..................................................15

*City of L.A. v. Bank of Am.*,
  2015 WL 4880511 (C.D. Cal. May 11, 2015) ..................................................16

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).......................................................................................4, 5

*Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*,
  752 F. Supp. 2d 1271 (S.D. Fla. 2010) ...................................................................... 11

*Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*,
  591 F. Supp. 3d 1204 (M.D. Fla. 2022) .................................................................... 12

*Crockett v. C.A.G. Invs., Inc.*,
  361 S.W.3d 262 (Ark. 2010) ........................................................................................ 11

*Crown Imports, LLC v. Sup. Ct.*,
  168 Cal. Rptr. 3d 228 (Cal. Ct. App. 2014) ............................................................... 11

*Crystal Clear Comp. Sols. LLC v. City of Helena-West Helena*,
  559 F. Supp. 3d 837 (E.D. Ark. 2021) ....................................................................... 12

*Davis v. BAC Home Loans Servicing, L.P.*,
  2022 WL 4535623 (D. Del. Sept. 28, 2022) .............................................................. 17

*Davis v. Chapon*,
  2015 WL 10791962 (M.D. Fla. Aug. 11, 2025) ......................................................... 13

*Davis v. Great N. Ins. Co.*,
  650 F. Supp. 3d 1332 (S.D. Fla. 2023) ...................................................................... 11

*Deutsch v. Cook*,
  2021 WL 5771667 (E.D. Cal. Dec. 6, 2021) .............................................................. 18

*Effs v. Sony Pictures Home Ent., Inc.*,
  197 So.3d 1243 (Fla. Dist. Ct. App. 2016) ................................................................. 17

*Energy Transp. Grp., Inc. v. Maritime Admin.*,
  956 F.2d 1206 (D.C. Cir. 1992) ..................................................................................... 6

*Enzo Biochem, Inc. v. Amersham PLC*,
  981 F. Supp. 2d 217 (S.D.N.Y. 2013) ........................................................................ 16

*Expert Masonry, Inc. v. Boone Cnty., Ky., Fiscal Ct.*,
  440 F.3d 336 (6th Cir. 2006) ................................................................................... 8, 10

*Flatirons Bank v. Alan W. Steinberg Ltd P'ship*,
  233 So.3d 1207 (Fla. Dist. Ct. App. 2017) ................................................................. 17

*Goel v. Ramachandran*,
  111 A.D.3d 783 (N.Y. App. Div. 2013) ....................................................................... 13

*Golden v. Mercury Auto Transp., LLC*,
  2024 WL 821361 (S.D. Fla. Jan. 30, 2024) ............................................................... 15

—iii—

*Greenspan v. IAC/InterActiveCorp*,
  2016 WL 5724972 (N.D. Cal. Sept. 30, 2016) ...................................................................2, 19

*Greenspan v. News Corp.*,
  2016 WL 74921 (Del. Ch. Jan. 6, 2016) ........................................................................................2

*Gunn v. Farmers Ins. Exch.*,
  372 S.W.3d 346 (Ark. 2010) ........................................................................................................16

*Hamptons v. Wells Fargo Bank, N.A.*,
  2022 WL 798120 (E.D. Ark. Mar. 15, 2022) ...............................................................................18

*Harris v. Procter & Gamble Cellulose Co.*,
  73 F.3d 321 (11th Cir. 1996) .........................................................................................................7

*Hatchell v. Wren*,
  211 S.W.3d 516 (Ark. 2005) ........................................................................................................13

*Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*,
  2013 WL 3810617 (S.D. Fla. July 22, 2013) ...............................................................................14

*Hogan v. Georgia*,
  812 Fed. Appx. 975 (11th Cir. 2020) ...........................................................................................18

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ...........................................................................................7, 9, 10

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  105 F.4th 1346 (11th Cir. 2024) ...........................................................................................7, 10

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  76 F.4th 1335 (11th Cir. 2023) ....................................................................................................11

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  2022 WL 1522054 (S.D. Fla. May 12, 2022) ................................................................................7

*Kalmanovitz v. G. Heileman Brewing Co.*,
  769 F.2d 152 (3d. Cir. 1985).......................................................................................................7, 8

*Keller v. FCOA, LLC*,
  2016 WL 110590 (W.D. Ark. Jan. 8, 2016) ................................................................................16

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau Ctny.*,
  558 F. Supp. 2d 378 (E.D.N.Y. 2008) ........................................................................................18

*LiveVideo.AI Corp. v. Redstone*,
  2025 WL 641465 (S.D.N.Y. Feb. 27, 2025).................................................................................2

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................4, 6

*MAC East, LLC v. Shoney's*,
    535 F.3d 1293 (11th Cir. 2008) ......................................................................12

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ..............................................................................11

*Marland v. Trump*,
    498 F. Supp. 3d 624 (E.D. Pa. 2020) ...............................................................2

*Matana v. Merkin*,
    957 F. Supp. 2d 473 (S.D.N.Y. 2013) .............................................................16

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
    734 F.2d 705 (11th Cir. 1984) ....................................................................9, 10

*Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*,
    761 So. 2d 1256 (Fla. Dist. Ct. App. 2000) ...................................................15

*Miller v. Donald*,
    541 F.3d 1091 (11th Cir. 2008) ........................................................................5

*MirTech Inc. v. AgroFresh Inc.*,
    561 F. Supp. 3d 447 (D. Del. 2021) ...............................................................16

*Mitsui O.S.K. Lines, Ltd. v. Dynasea Corp.*,
    85 Cal. Rptr. 2d 1 (Cal. Ct. App. 1999) ........................................................14

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) ........................................................................16

*Mountain Home Flight Serv., Inc. v. Baxter Cnty.*,
    2012 WL 2339722 (W.D. Ark. Jun. 19, 2012) ...............................................17

*MSP Recovery Claims, Series LLC v. Caring Voice Coalition, Inc.*,
    722 F. Supp. 3d 1296 (S.D. Fla. 2024) ...........................................................18

*MYD Marine Distributors, Inc. v. Donovan Marine, Inc.*,
    2009 WL 701003 (S.D. Fla. Mar., 16, 2009) .................................................16

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ..............................................................................13

*Newer v. FCA US LLC*,
    552 F. Supp. 3d 1344 (S.D. Fla. 2021) ...........................................................16

*Ohio v. Am. Express Co.*,
   585 U.S. 529 (2018)............................................................................................8, 9

*Optronic Techs. v. Celestron Acquisition, LLC*,
   329 Cal. Rptr. 3d 714 (Cal. Ct. App. 2025) ...............................................16

*PeerMusic, III, Ltd. v. LiveUniverse, Inc.*,
   2012 WL 4840803 (C.D. Cal. Oct. 9, 2012) ..............................................19

*Peermusic, III, Ltd. v. LiveUniverse, Inc.*,
   2011 WL 2358549 (C.D. Cal. May 24, 2011) ............................................19

*Peterson v. Cellco P'ship*,
   80 Cal. Rptr. 3d 316 (Cal. Ct. App. 2008) .................................................13

*Procaps S.A. v. Patheon, Inc.*,
   845 F.3d 1072 (11th Cir. 2016) ...................................................................9

*Progressive Sterilization, LLC v. Turbett Surgical LLC*,
   2020 WL 1849709 (D. Del. Apr. 13, 2020)...............................................17

*Quality Auto Painting Ctr. Of Roselle, Inc. v. State Farm Indem. Co.*,
   917 F.3d 1249 (11th Cir. 2019) ...................................................................9

*Shekerdemian v. Silverback United Inc.*,
   2024 WL 3312036 (S.D. Fla. June 5, 2024) ..............................................12

*Sivas v. Luxottica Retail N. Am., Inc.*,
   2019 WL 4189811 (E.D. Cal. Sept. 4, 2019)..............................................12

*SmithKline Beecham v. Merck & Co.*,
   766 A.2d 442 (Del. 2000) ..........................................................................16

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)......................................................................................5

*State Farm Mut. Auto. Ins. Co. v. Performance Ortho. & Neurosurgery, LLC*,
   315 F. Supp. 3d 1291 (S.D. Fla. 2018) ......................................................14

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)........................................................................................5

*Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp.*,
   581 F. Supp. 2d 1215 (S.D. Fla. 2008) ......................................................18

*In re Takata Airbag Prod. Liab. Litig.*,
   255 F. Supp. 3d 1241 (S.D. Fla. 2017) ................................................13, 14

*In re Takata Airbag Prods. Liab. Litig.*,
   524 F. Supp. 3d 1266 (S.D. Fla. 2021) ...................................................................15

*TikTok Inc. v. CFIUS*,
   No. 20-1444 (D.C. Cir. Nov. 10, 2020) ...................................................................6

*TikTok Inc. v. Trump*,
   490 F. Supp. 3d 73 (D.D.C. 2020) ...........................................................................2

*TikTok Inc. v. Trump*,
   507 F. Supp. 3d 92 (D.D.C. 2020) ...........................................................................2

*Tymar Dist. LLC v. Mitchell Grp. USA, LLC*,
   558 F. Supp. 3d 1275 (S.D. Fla. 2021) ...................................................................15

*United Am. Corp. v. Bitmain, Inc.*,
   530 F. Supp. 3d 1241 (S.D. Fla. 2021) .....................................................................9

*United States v. Google*,
   No. 20-03010 (D.D.C. Jan. 25, 2024) ....................................................................19

*United States v. Topco Assocs., Inc.*,
   405 U.S. 596 (1972) .................................................................................................9

*Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*,
   2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) .......................................................14

*Zarfati v. Artsana USA, Inc.*,
   2025 WL 373081 (S.D. Fla. Jan. 15, 2025) ............................................................15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) ...............................................................................................17

*Zetes v. Stephens*,
   108 A.D.3d 1014 (N.Y. App. Div. 2013) ...............................................................11

**Statutes**

15 U.S.C. § 1 .....................................................................................................7, 8, 9

Fla. Stat. § 501.204 ...................................................................................14, 15, 16, 18

**Other Authorities**

85 Fed. Reg. 51,297 (Aug. 19, 2020).................................................................2, 3, 6, 12

Restatement (Third) of Restitution & Unjust Enrichment (Am. L. Inst. 2011)............................13

Restatement (Third) of Torts: Liab. for Econ. Harm (Am. L. Inst. 2020)....................................11

## INTRODUCTION

Plaintiff alleges that its principal, Brad Greenspan, submitted an unsolicited offer in 2020 to buy TikTok's U.S. operations from Defendants, which declined the offer. At that time, the Plaintiff company, "TikTok Global LLC," did not exist. Five years later, "TikTok Global LLC" incorporated in Florida and filed this lawsuit. Despite its name, "TikTok Global LLC" has no affiliation with Defendants. In its Complaint, Plaintiff weaves a tangled web of conspiratorial allegations involving Defendants, another technology company, and the former Treasury Secretary. Plaintiff's allegations are absurd. Its Complaint fails at every level.

*First*, the Court lacks subject matter jurisdiction because Plaintiff does not have standing. Defendants' alleged rejection of Greenspan's bid caused no redressable legal injury to Plaintiff—or to anyone else.

*Second*, even if the Court had jurisdiction (it does not), each cause of action fails to state a claim. Among other faults, Plaintiff's antitrust conspiracy claim alleges no actual or potential harm to competition. Plaintiff's tortious interference claim alleges no business relations with existing or prospective legal rights. Plaintiff's unjust enrichment claim alleges no benefit conferred at Plaintiff's expense. And Plaintiff's consumer protection claim alleges no consumer harm.

*Third*, even if any of Plaintiff's claims were cognizable (they are not), the statute of limitations applicable to each claim—four years at the most—would bar this suit. Plaintiff's claims on their face would have accrued in 2020, but Plaintiff filed this lawsuit in 2025.

*Finally*, the Court should dismiss Plaintiff's Complaint with prejudice. The flaws in the Complaint cannot be fixed through amendment, and Greenspan, Plaintiff's principal, is a vexatious litigant for whom leave to amend would invite the perpetuation of these proceedings without legal basis.

## BACKGROUND

TikTok is an online entertainment platform that enables users to create, share, and view videos. (*See* Compl. ¶¶ 12, 17).[1] In the United States, TikTok Inc. provides the TikTok platform. (*Id.* ¶ 12). TikTok Inc. is incorporated and has its principal place of business in California. (*Id.*). TikTok Inc.'s ultimate parent is ByteDance Ltd. ("ByteDance") (*see id.* ¶¶ 3, 13), a Cayman Islands-incorporated holding company. In 2020, Yiming Zhang was ByteDance's CEO. (*Id.* ¶ 14).

On August 14, 2020, President Trump issued an order that purported to require ByteDance to divest from its TikTok U.S. business within 90 days. (*Id.* ¶ 17); *see also* 85 Fed. Reg. 51,297 (Aug. 19, 2020) ("Order" or "August 14, 2020 Order").[2]

Plaintiff TikTok Global LLC is operated by Brad Greenspan, an internet entrepreneur who lives in New York. (Compl. ¶¶ 11, 27).[3] Plaintiff alleges that it is the successor company to two

---

[1] This motion to dismiss assumes that the factual allegations in the Complaint are true. For avoidance of doubt, Defendants do not concede the accuracy of any factual allegation.

[2] President Trump issued another order targeting ByteDance on August 6, 2020, purporting to ban transactions with ByteDance and its subsidiaries in the U.S. under the International Emergency Economic Powers Act. (Compl. ¶ 17). That order was enjoined following lawsuits brought by ByteDance Ltd., TikTok Inc., and TikTok users. *See TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 86 (D.D.C. 2020); *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 115 (D.D.C. 2020); *Marland v. Trump*, 498 F. Supp. 3d 624, 645 (E.D. Pa. 2020).

[3] Greenspan is a serial plaintiff who has been declared a vexatious litigant. *See Greenspan v. IAC/InterActiveCorp*, 2016 WL 5724972, at *3 (N.D. Cal. Sept. 30, 2016). He has filed numerous lawsuits alleging conspiracies and other claims stemming from alleged corporate transactions. *See, e.g.*, *LiveVideo.AI Corp. v. Redstone*, 2025 WL 641465, at *1 (S.D.N.Y. Feb. 27, 2025) (asserting claims "arising out of defendants' failure to respond to a series of voicemail messages left … by LiveVideo's principal Brad Greenspan in June 2024 … offering to enter into negotiations to purchase Paramount"); *IAC/InterActiveCorp*, 2016 WL 5724972, at *1 (N.D. Cal. Sept. 30, 2016) (alleging that several companies conspired to depress the sales price of an asset); *id.* at *2 (collecting four other cases Greenspan has filed asserting similar claims); *see also Greenspan v. News Corp.*, 2016 WL 74921, at *1 (Del. Ch. Jan. 6, 2016) ("This matter involves an enthusiastic *pro se* Plaintiff, Brad D. Greenspan, who has sued a large number of entities, on various theories."). The Plaintiff company, "TikTok Global LLC," appears to have been created on March 25, 2025, nine days before this lawsuit was filed. *See* Florida Department of State: Division of Corporations, https://perma.cc/D94W-XHPW (last visited Apr. 25, 2025).

companies that Greenspan formed in 2020 with the hope of acquiring TikTok's U.S. business from ByteDance following the August 14, 2020 Order—TikTok Global Network Inc. and TikTok Global Inc. (*Id.* ¶¶ 11, 20). TikTok Global Network Inc. is an Arkansas-based company; TikTok Global Inc. is incorporated in Delaware. (*Id.* ¶ 11).

Plaintiff alleges that, on September 9, 2020, its predecessors submitted "notice to CFIUS [the Committee on Foreign Investment in the United States] under Section 2(d)(i) [of the August 14, 2020 Order] of its intent to bid for TikTok's U.S. operations." (*Id.* ¶ 24).

Nothing in the Order contemplated Plaintiffs' purported "notice." Section 2(d) of the Order, rather, provided that ByteDance could not complete a divestment to any third party "(i) until *ByteDance* notifies CFIUS in writing of the intended recipient or buyer; and (ii) unless 10 business days have passed from the notification in section 2(d)(i) and CFIUS has not issued an objection to ByteDance." 85 Fed. Reg. 51,297 (emphasis added); (*see also* Compl. ¶ 18). Section 2(d)(i) thus outlined a procedure by which *ByteDance* could notify CFIUS of an intended buyer—*not* a procedure by which any other party could provide such notice. Nonetheless, Plaintiff alleges that its intent to bid was "proper[]" (Compl. ¶ 24), and that on September 9, 2020, its predecessors contemporaneously provided "[t]he CFIUS submission" to ByteDance's CEO via an email from Greenspan. (*Id.* ¶ 25).

After its purported "notice," Plaintiff alleges that Greenspan followed up with CFIUS and ByteDance five days later, early in the morning on September 14, 2020. (*Id.* ¶ 38; Compl. Ex. 3). Plaintiff alleges that, later that morning, then-Treasury Secretary Mnuchin appeared on the television network CNBC, at which time he "announced that Oracle had been selected as the 'trusted technology partner' for TikTok's U.S. operations" and "unveiled his own version of 'TikTok Global.'" (Compl. ¶¶ 40, 41).

According to the Complaint, Greenspan and an associate then contacted Oracle, several members of Congress, and others, regarding the offer to buy TikTok's U.S. operations. (*Id.* ¶¶ 53, 56, 59; Compl. Ex. 6, 7). Despite Greenspan's purported offer, Plaintiff alleges that "ByteDance publicly endorsed Mnuchin's 'TikTok Global' venture" through a blog post on its website on September 20, 2020. (Compl. ¶ 57). On September 24, 2020, Plaintiff claims that its predecessors then submitted an updated bid, which, according to Plaintiff, ByteDance and its CEO refused to accept. (*Id.* ¶¶ 61, 65). Plaintiff claims that, as a result, it has endured "crushing lost profits and priceless business opportunities that would have flowed naturally from a successful acquisition of TikTok's U.S. operations." (*Id.* ¶ 75).

Plaintiff filed this lawsuit on April 3, 2025, more than four-and-a-half years after Defendants purportedly declined to accept either of its predecessors' alleged offers. Plaintiff now asserts claims for violation of the Sherman Antitrust Act (Count I), for tortious interference with advantageous business relationship (Count II), for unjust enrichment (Count III), and for violation of the Florida Deceptive and Unfair Trade Practices Act (Count IV).

## ARGUMENT

Plaintiff's claims fail for multiple reasons: (1) under Rule 12(b)(1) for lack of standing; (2) under Rule 12(b)(6) for failure to state an actionable claim; and (3) under Rule 12(b)(6) due to the expiration of the statute of limitations apparent from the face of the Complaint.

### I. Plaintiff Lacks Standing.

Standing is a requirement for subject matter jurisdiction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To have standing, a plaintiff must demonstrate: (1) a concrete and particularized injury in fact, either actual or imminent, (2) a causal connection between the injury and the defendant's challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

To establish an injury in fact, the plaintiff must show that the injury is "real," not "abstract," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), or dependent on a "chain of possibilities," *Clapper*, 568 U.S. at 410. To demonstrate causation, a plaintiff must show "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

Plaintiff has not plausibly asserted a concrete injury fairly traceable to Defendants' challenged conduct. Plaintiff's alleged injuries are the lost profits and missed business opportunities that it purportedly would have received if Plaintiff had been able to acquire TikTok's U.S. operations from ByteDance. (*See* Compl. ¶¶ 75, 105, 117, 129–30, 140).

It is not only speculative, but also utterly fanciful and implausible, that ByteDance would have sold TikTok's U.S. operations to Plaintiff but for the challenged conduct. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 984 (11th Cir. 2005) (no standing when alleged injury "amounts to no more than conjecture").

*First*, and even assuming that Plaintiff actually had the financial means to effectuate its "offer," it is implausible that ByteDance would have sold TikTok's U.S. operations to Plaintiff's predecessors based on a handful of emails to generic inboxes and other addresses allegedly associated with the company (s*ee* Compl. ¶¶ 25, 38, 61, 63), from someone who had already been declared a vexatious litigant by a federal court, *see* n.3, *supra*, with no alleged history of prior dealings with Defendants. *See, e.g.*, *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) ("[W]ildly implausible allegations in the complaint should not be taken to be true.").

*Second*, even if Greenspan's generic emails represented a plausible bid to acquire a company allegedly valued at the time at more than $50 billion (*see* Compl. Ex. 5 at 20), Plaintiff's communications did not trigger the legal consequences that it imagines (*see, e.g.*, Compl. ¶ 124),

let alone give rise to a legal interest sufficient to confer standing. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The August 14, 2020 Order did not create any process by which parties could submit bids to CFIUS (or anyone else) for consideration. Rather, the Order required ByteDance to divest its U.S. TikTok assets and directed *ByteDance*—and *only* ByteDance—to notify CFIUS of the intended recipient or buyer of the assets before a divestiture could be completed. *See* 85 Fed. Reg. 51,297, Sec. 2(d)(i). Nothing in the Order, in other words, gave Plaintiff any legal interest or right. *See Lujan*, 504 U.S. at 560 (to have standing, plaintiff must have suffered "an invasion of a legally protected interest").

*Third*, even if Plaintiff *did* have some sort of legal interest traceable to the August 14, 2020 Order (it did not), shortly after Plaintiff alleges that Greenspan submitted his bid, ByteDance Ltd. and TikTok Inc. challenged the Order in court, which led to it not being enforced. *See* Pet. for Review, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Nov. 10, 2020) (challenging the Order as exceeding the President's statutory authority, violating due process rights, violating the Administrative Procedure Act, and effecting an unconstitutional taking); Order, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Feb. 19, 2021) (ordering that the case be held in abeyance and directing the parties to file periodic status reports); Status Report, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Apr. 15, 2025) (abeyance continues to be appropriate).

The upshot is that, despite the issuance of the Order, ByteDance was not forced to sell TikTok's U.S. assets in the fall of 2020, and no CFIUS-mandated divestment ever occurred. It is implausible that ByteDance would have entertained an offer from Plaintiff under "fire sale" conditions in 2020 created by the August 14, 2020 Order; it is even more fanciful that ByteDance would have sold TikTok's U.S. operations to Plaintiff under normal conditions. *See Energy*

—6—

*Transp. Grp., Inc. v. Maritime Admin.*, 956 F.2d 1206, 1211 (D.C. Cir. 1992) ("There could be no real injury—certainly no injury 'fairly traceable' to the allegedly illegal act—unless the plaintiff would have had some chance of prevailing in a bidding free of the alleged illegalities.").

In short, without plausibly alleging any concrete injury, let alone a causal connection between that injury and the complained-of conduct, Plaintiff lacks standing to sue. Accordingly, the Complaint should be dismissed for lack of subject matter jurisdiction.

## II.     **Plaintiff Fails to State a Claim.**

A Rule 12(b)(6) motion tests the sufficiency of the pleadings. *See Harris v. Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. As detailed below, Plaintiff's Complaint fails to plausibly allege any actionable claims.

### A.     **Plaintiff's antitrust claim fails.**

Count One asserts a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, which requires Plaintiff to "show that defendants had a (1) conspiracy that (2) unreasonably restrained trade." *In re Jan. 2021 Short Squeeze Trading Litig.*, 105 F.4th 1346, 1354 (11th Cir. 2024). This claim fails for multiple reasons.

*First*, Plaintiff's Complaint does not present an antitrust problem at all, because it does not plausibly allege a restraint on "trade." "Trade," as used in the Sherman Act, means "commercial competition in the marketing of goods or services." *Kalmanovitz v. G. Heileman Brewing Co.*, 769 F.2d 152, 156 (3d. Cir. 1985) (quoting *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 495 (1940)); *see also In re Jan. 2021 Short Squeeze Trading Litig.*, 2022 WL 1522054, at *27 n.22 (S.D. Fla.

May 12, 2022). "[T]he sale of stock of a single company within the context of a takeover battle for that one company does not fall within this definition." *Kalmanovitz*, 769 F.2d at 156.

The basis for Plaintiff's antitrust claim is that Defendants allegedly "block[ed]" Plaintiff's bid to buy TikTok's U.S. operations, thus "preserv[ing]" ByteDance's hold over the TikTok U.S. platform. (*See* Compl. ¶¶ 82–83). "The antitrust laws simply were not designed to regulate this type of corporate power struggle." *See Kalmanovitz*, 769 F.2d at 156.

*Second*, Plaintiff fails to invoke any plausible theory of an antitrust violation. Courts have long recognized that disappointed bidders cannot state a viable antitrust claim simply by alleging that sellers "conspired" against them with winning bidders, or every commercial agreement would be rendered a conspiracy. As the Sixth Circuit has explained:

> To allow any auction, bidding, or other competitive sales process to be challenged whenever one potential supplier is distraught because it did not win the sale would be to outlaw competition and salesmanship, for companies and their staffs could not reasonably be expected to compete to win sales, projects, and new clients if, in so doing, they risk treble damages and even imprisonment when even one rival is disappointed with the results.

*Expert Masonry, Inc. v. Boone Cnty., Ky., Fiscal Ct.*, 440 F.3d 336, 347–48 (6th Cir. 2006). Thus, even if Plaintiff could plausibly allege that Defendants' conduct included "making a side deal or [] otherwise circumventing the bidding process in reaching a final arrangement," such conduct "do[es] not breach Section 1 of the Sherman Act where the alleged vertical agreements involve only one buyer and one seller." *Id.* at 348.

Plaintiff cannot overcome its failure to allege a viable antitrust claim by attempting (at Compl. ¶¶ 67, 103) to invoke the concepts of "market allocation," "bid rigging," "concerted refusal to deal," and "group boycott." Each of these antitrust concepts requires a "horizontal agreement" between competitors. *See, e.g., Ohio v. Am. Express Co.*, 585 U.S. 529, 540–41 (2018) ("Typically only 'horizontal' restraints—restraints 'imposed by agreement between competitors'—qualify as

—8—

unreasonable *per se*."); *Quality Auto Painting Ctr. Of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1271 (11th Cir. 2019) ("For boycotting to be *per se* illegal, it must involve 'horizontal agreements among direct competitors.'"); *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 719 (11th Cir. 1984) ("horizontal allocations of markets are said to be *per se* violations of the antitrust law"); *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1272 (S.D. Fla. 2021) ("Bid rigging is a form of horizontal price fixing and is a *per se* violation of § 1."). But Plaintiff has not alleged that Defendants and its alleged co-conspirator Oracle are horizontal competitors. To the contrary, the Complaint alleges that Defendants provide a short-form video platform (Compl. ¶ 1), while Oracle is a cloud storage provider (*id.* ¶ 43). Their relationship, as alleged in the complaint, is vertical, not horizontal. *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972) (vertical relationships are those between "persons at different levels of the market structure, e.g., manufacturers and distributors").

*Third*, because the relationship between ByteDance and Oracle is alleged to be vertical, not horizontal, the "rule of reason" applies. *See Am. Express Co.*, 585 U.S. at 541 (all restraints that are not *per se* unreasonable are judged by the "rule of reason"). Under the rule of reason, a restraint on trade is unreasonable if the plaintiff "has shown that the alleged restraint has had an anticompetitive effect on the market." *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1084 (11th Cir. 2016). To avoid dismissal at the pleading stage, the plaintiff must at least (1) define the market and (2) make "specific factual allegations" of anticompetitive effects. *Jacobs*, 626 F.3d at 1336, 1339.

Plaintiff does neither. Plaintiff fails to "present enough information in [its] complaint to plausibly suggest the contours" of a relevant market. *See id.* at 1336. "Without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition," *Am.*

*Express Co.*, 585 U.S. at 543 (quotations omitted), requiring dismissal. Moreover, Plaintiff fails to plead "specific anticompetitive effects." *In re Short Squeeze*, 105 F.4th at 1355 ("[T]he plaintiff must plead specific anticompetitive effects (be they actual or potential) in the relevant market to avoid dismissal."). Anticompetitive effects include things like "reduction of output, increase in price, or deterioration in quality." *Jacobs*, 626 F.3d at 1339. Plaintiff pleads nothing of the sort. Plaintiff's only specific allegation of harm is to its *own* profits and business opportunities for failing to have acquired TikTok's U.S. operations. (*See* Compl. ¶ 105).

*Finally*, Plaintiff fails to allege an "antitrust injury." "The antitrust laws … were enacted for the protection of competition not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quotations omitted). As a result, to bring an antitrust action, "a plaintiff must have suffered antitrust injury, which is injury of the type the antitrust laws were intended to prevent and which flows from that which makes a defendant's acts unlawful." *Midwestern Waffles*, 734 F.2d at 710. Put differently, to allege an antitrust injury, the injury must be "attributable to an anti-competitive aspect of the practice under scrutiny." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). Even if Plaintiff had adequately alleged that Defendants' conduct reduced competition in the market, Plaintiff does not plausibly allege that its injury stems from that reduction in competition. *See Expert Masonry*, 440 F.3d at 348 (no antitrust injury suffered by "dejected buyers or sellers who simply allege that one buyer and one seller colluded to reach a deal that may or may not have been inferior to the deal offered by the disappointed party"). Accordingly, Plaintiff's antitrust claim fails.

**B.     Plaintiff's tortious interference claim fails.**

Count Two asserts a tortious interference claim. Tortious interference with advantageous business relationships "generally involves cases in which a defendant's intentional wrong prevents the plaintiff from making a contract with another party or otherwise pursuing economic gain."

Restatement (Third) of Torts: Liab. for Econ. Harm § 18 cmt. A (Am. L. Inst. 2020). To state a claim for tortious interference with advantageous business relationships under Florida law, a plaintiff must show "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (quotations omitted).

The elements of this claim are substantively similar in Arkansas, California, Delaware, and New York, the other jurisdictions that, from the face of the Complaint, may have a relationship to this claim. *See, e.g.*, *Crockett v. C.A.G. Invs., Inc.*, 361 S.W.3d 262, 267 (Ark. 2010); *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001); *Crown Imports, LLC v. Sup. Ct.*, 168 Cal. Rptr. 3d 228, 235 (Cal. Ct. App. 2014); *Zetes v. Stephens*, 108 A.D.3d 1014, 1020 (N.Y. App. Div. 2013). Because the laws of those states all point to the same outcome—that Plaintiff fails to state a claim for tortious interference—the Court need not decide which state's law applies. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1346 (11th Cir. 2023) ("[A] court need not resolve a choice-of-law dispute if there is a 'false conflict,' such that the different laws point to the same outcome under the facts of the case."); *Davis v. Great N. Ins. Co.*, 650 F. Supp. 3d 1332, 1338 (S.D. Fla. 2023) ("A choice of law analysis is only necessary if the outcome would be different based on one state's laws over the other.").

Plaintiff fails to state a claim for tortious interference under any relevant state's law because it has not plausibly alleged the existence of a relevant, specific business relationship under which it had any existing or prospective legal rights. A "speculative allegation regarding a *potential* business relationship is insufficient to support a tortious interference claim." *BWG Design Ltd., Inc. v. Serv. Am. Corp.*, 2010 WL 5014289, at *6 (S.D. Fla. Dec. 3, 2010). While Plaintiff alleges

that it had "a reasonable expectation of economic advantage from its bid to acquire TikTok's U.S. operations" from ByteDance (Compl. ¶ 107), that allegation is wholly implausible. Its purported basis is that Plaintiff's predecessors "followed all required CFIUS procedures and submitted legitimate, fully-funded offers." (*Id.*). But, as explained above, that misconstrues the August 14, 2020 Order, which provides that ByteDance could not complete a divestment of TikTok's U.S. operations to any third party under the Order "(i) until *ByteDance* notifies CFIUS in writing of the intended recipient or buyer." 85 Fed. Reg. 51,297, Sec. 2(d)(i) (emphasis added). *Plaintiff's* alleged notification to CFIUS of its intention to submit an offer had no legal significance. Neither the purported notification nor any other alleged action on the part of Plaintiff afforded it any "existing or prospective legal or contractual rights." *Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, 591 F. Supp. 3d 1204, 1215 (M.D. Fla. 2022). Plaintiff fails to allege any identifiable non-speculative business relationship.

Plaintiff also has not plausibly alleged any cognizable form of interference. Plaintiff's theory is that it allegedly submitted bids *to ByteDance* to buy TikTok's U.S. operations *from ByteDance*. (*See* Compl ¶ 38; Compl. Ex. 9). Plaintiff contends that ByteDance then interfered with those bids by not accepting them. But ByteDance cannot tortiously interfere with itself. *See MAC East, LLC v. Shoney's*, 535 F.3d 1293, 1297 (11th Cir. 2008) ("[A] tortious interference claim can be maintained only when the defendant is independent of or a stranger to the relation or contract with which he allegedly interfered."); *Shekerdemian v. Silverback United Inc.*, 2024 WL 3312036, at *2 (S.D. Fla. June 5, 2024) ("It is well settled that '[o]ne cannot tortiously interfere with a contract to which it is a party.'"); *Crystal Clear Comp. Sols. LLC v. City of Helena-West Helena*, 559 F. Supp. 3d 837, 855 (E.D. Ark. 2021) ("A party to a contract cannot … be held liable for interfering with the party's own contract.") (quotations omitted); *Sivas v. Luxottica Retail N.*

*Am., Inc.*, 2019 WL 4189811, at *4 (E.D. Cal. Sept. 4, 2019) ("[Defendant] cannot be charged with interfering with its own relationship with [Plaintiff]."). Accordingly, Plaintiff fails to state a claim for tortious interference.

### C.    Plaintiff's unjust enrichment claim fails.

Count Three asserts a claim for unjust enrichment. "A person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution & Unjust Enrichment § 1 (Am. L. Inst. 2011). To state a claim for unjust enrichment under Florida law, a plaintiff must show that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *In re Takata Airbag Prod. Liab. Litig.*, 255 F. Supp. 3d 1241, 1261 (S.D. Fla. 2017). The elements of unjust enrichment, as with the elements of tortious interference, do not materially differ between the various states that may have a relationship to Plaintiff's claim. *See, e.g.*, *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010); *Hatchell v. Wren*, 211 S.W.3d 516, 522 (Ark. 2005); *Goel v. Ramachandran*, 111 A.D.3d 783, 790 (N.Y. App. Div. 2013); *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008). Accordingly, a choice of law analysis is not necessary. Regardless which state's law applies, Plaintiff's unjust enrichment claim fails for at least two reasons.

*First*, Plaintiff fails to allege that it conferred a benefit on ByteDance—*i.e.*, that ByteDance was enriched at Plaintiff's expense. Plaintiff alleges that ByteDance received the benefit of "maintaining control over TikTok's U.S. operations … , all while sidestepping the genuine divestment mandated by the Executive Order." (Compl. ¶ 119). But Plaintiff has not alleged—and cannot plausibly allege—that it conferred that benefit on ByteDance. *See Davis v. Chapon*, 2015 WL 10791962, at *5 (M.D. Fla. Aug. 11, 2025) (dismissing unjust enrichment claim for failure to

plausibly allege that plaintiff conferred a benefit on defendant); *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) (same). As explained above, ByteDance Ltd. and TikTok Inc. challenged the Order, which ultimately led to it not being enforced. *See* page 6, *supra*.

*Second*, Plaintiff fails to allege that ByteDance "voluntarily accepted" and "retained" a benefit, such that any enrichment could possibly be considered unjust. *In re Takata Airbag Prod. Liab. Litig.*, 255 F. Supp. 3d at 1261. To the extent that Plaintiff alleges that the benefit it conferred on Defendants was merely its *offer* to buy TikTok's U.S. operations, Plaintiff repeatedly alleges elsewhere in the Complaint that ByteDance *rejected* that offer. (*See* Compl. ¶¶ 65, 67, 77, 113). The Court cannot ignore those other allegations in testing the plausibility of Plaintiff's claims. *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005) ("We read the complaint as a whole."); *Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*, 2009 WL 3853592, at *2 (M.D. Fla. Mar. 30, 2009) ("The allegations of the Complaint may not be parsed and read in isolation, but must be read as a whole."). Plaintiff's claim for unjust enrichment therefore fails. *See Mitsui O.S.K. Lines, Ltd. v. Dynasea Corp.*, 85 Cal. Rptr. 2d 1, 4 (Cal. Ct. App. 1999) (no unjust enrichment when defendant "obtained no benefit from the containers it rejected").

### D.    Plaintiff's consumer protection claim fails.

Count Four asserts a consumer protection claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, ("FDUTPA") relating to ByteDance's allegedly "false[] portrayal [of] the Oracle partnership as a genuine divestment of TikTok's U.S. operations." (Compl. ¶132). To state a claim under FDUTPA, a plaintiff must show "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *State Farm Mut. Auto. Ins. Co. v. Performance Ortho. & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018). "A deceptive act or practice is one that is likely to mislead consumers." *Id.* (quotations omitted).

Plaintiff's FDUTPA claim fails because it alleges no cognizable harm to consumers, let alone one with the required nexus to Florida. *First*, Plaintiff does not plausibly allege any consumer harm. To state a FDUTPA claim, "a plaintiff must allege that the underlying practice or act was harmful to a consumer." *Golden v. Mercury Auto Transp., LLC*, 2024 WL 821361, at *2 (S.D. Fla. Jan. 30, 2024). But Plaintiff alleges only harm to itself. (*See* Compl. ¶¶ 140–41). And Plaintiff, in this context, is not plausibly a consumer. Rather, Plaintiff alleges that it was a business competitor (*see id.* ¶ 86), interested in acquiring a portion of Defendants' business. *See In re Takata Airbag Prods. Liab. Litig.*, 524 F. Supp. 3d 1266, 1293 (S.D. Fla. 2021) (considering a business competitor to be a non-consumer). "While an entity other than a consumer can bring a FDUTPA claim, harm to consumers is still a required element." *Car Body Lab Inc. v. Lithia Motors, Inc.*, 2021 WL 2658693, at *3 (S.D. Fla. June 22, 2021). Because Plaintiff does not plausibly allege harm to any consumers, its FDUTPA claim must be dismissed. *See Tymar Dist. LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1290 (S.D. Fla. 2021).

*Second*, "FDUTPA applies only to action that occurred within the state of Florida." *Zarfati v. Artsana USA, Inc.*, 2025 WL 373081, at *12 (S.D. Fla. Jan. 15, 2025) (quotations omitted); *see also Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000) ("FDUTPA … seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state … ."). Plaintiff's consumer protection claim rests on the allegation that ByteDance falsely portrayed the Oracle partnership—in particular, through Secretary Mnuchin's appearance on CNBC on September 14, 2020—as complying with the August 14, 2020 Order, a portrayal which allegedly harmed Plaintiff and its predecessors. (*See* Compl. ¶¶ 134, 141). But Plaintiff does not allege that any of Defendants' conduct occurred in Florida. The Complaint concedes that Defendants are not Florida

corporations or residents. (*Id.* ¶¶ 12–13). Plaintiff's predecessors were not Florida residents either. (*Id.* ¶ 11). The only connection Plaintiff's complaint has to Florida is the allegation that Plaintiff itself is now a Florida LLC. (*Id.*). But Plaintiff does not allege that it was a Florida LLC in 2020 when the alleged false representations occurred. Plaintiff cannot allege that Defendants' conduct was "directed to [Plaintiff] in Florida and that Florida consumers were misled." *Buckley v. Moore*, 2021 WL 3173185, at *9 (S.D. Fla. July 26, 2021). Thus, Plaintiff's FDUTPA claim fails.

### III.    Plaintiff's Claims Are Time-Barred.

Dismissal of a claim under Rule 12(b)(6) on statute-of-limitations grounds is appropriate "if it is apparent from the face of the complaint that the claim is time-barred." *Blessinger v. Aecom*, 526 F. Supp. 3d 1319, 1324 (S.D. Fla. 2021) (quotations omitted). This Complaint, brought in 2025, pleads that the harm accrued in 2020. Accordingly, the Complaint demonstrates on its face that the applicable statutes of limitations, none of which exceeds four years, have run.

Each of Plaintiff's claims has a four-year statute of limitations. *See Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 827 (11th Cir. 1999) (Clayton Act, governing private actions for alleged Sherman Act violations); *Newer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1363 (S.D. Fla. 2021) (FDUTPA and unjust enrichment); *MYD Marine Distributors, Inc. v. Donovan Marine, Inc.*, 2009 WL 701003, at *2 (S.D. Fla. Mar., 16, 2009) (tortious interference). The limitations periods under other state's laws potentially applicable are even shorter.[4]

---

[4] Tortious interference has a three-year statute in Arkansas, Delaware, and New York, and two years in California. *See Gunn v. Farmers Ins. Exch.*, 372 S.W.3d 346, 352 (Ark. 2010); *SmithKline Beecham v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000), *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 225 (S.D.N.Y. 2013); *Optronic Techs. v. Celestron Acquisition, LLC*, 329 Cal. Rptr. 3d 714, 729 (Cal. Ct. App. 2025). For unjust enrichment, it is three years in Arkansas, Delaware, and New York (for money damages) and two years in California. *See Keller v. FCOA, LLC*, 2016 WL 110590, at *1 (W.D. Ark. Jan. 8, 2016), *MirTech Inc. v. AgroFresh Inc.*, 561 F. Supp. 3d 447, 455 (D. Del. 2021); *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013); *City of L.A. v. Bank of Am.*, 2015 WL 4880511, at *3 (C.D. Cal. May 11, 2015).

To the extent that Plaintiff states a viable claim at all (it does not), each of Plaintiff's claims would have accrued in September 2020, more than four years ago. Plaintiff's antitrust claim would have accrued in September 2020 when ByteDance and Oracle allegedly conspired to suppress Plaintiff's bid to buy TikTok's U.S. operations. (Compl. ¶¶ 86); *see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (antitrust claim accrues "when a defendant commits an act that injures a plaintiff's business").

Plaintiff's tortious interference claim would have accrued in September 2020 when ByteDance allegedly "engaged in deliberate acts of interference" with Plaintiff's attempt to buy TikTok's U.S. operations. (Compl. ¶113); *see Effs v. Sony Pictures Home Ent., Inc.*, 197 So.3d 1243, 1245 (Fla. Dist. Ct. App. 2016) (continuing tort doctrine does not apply to tortious interference claims); *Mountain Home Flight Serv., Inc. v. Baxter Cnty.*, 2012 WL 2339722, *4 (W.D. Ark. Jun. 19, 2012) (same); *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010) (same); *Andrew Greenberg, Inc. v. Svane, Inc.*, 36 A.D.3d 1094, 1099 (N.Y. App. Div. 2007) (same); *Progressive Sterilization, LLC v. Turbett Surgical LLC*, 2020 WL 1849709, at *3 (D. Del. Apr. 13, 2020) (tortious interference claim accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action").

Plaintiff's unjust enrichment claim would have accrued in September 2020 when ByteDance allegedly received the benefit of "maintaining control over TikTok's U.S. operations" by "dismissing [Plaintiff's] legitimate acquisition proposals." (Compl. ¶¶ 119, 121); *see Flatirons Bank v. Alan W. Steinberg Ltd P'ship*, 233 So.3d 1207, 1213 (Fla. Dist. Ct. App. 2017) ("The statute of limitations for an unjust enrichment claim begins to run at the time the alleged benefit is conferred and received by the defendant."); *Davis v. BAC Home Loans Servicing, L.P.*, 2022 WL 4535623, at *5 (D. Del. Sept. 28, 2022) ("An unjust enrichment claim accrues when the wrongful

act causing the enrichment and impoverishment occurred."); *Hamptons v. Wells Fargo Bank, N.A.*, 2022 WL 798120, at \*11 n.218 (E.D. Ark. Mar. 15, 2022) ("[A]n unjust enrichment claim like Mr. Hampton's accrues once at a single time period, even if the damages from that claim increase over time … ."); *Deutsch v. Cook*, 2021 WL 5771667, at \*3 (E.D. Cal. Dec. 6, 2021) (unjust enrichment claim accrued "when it became clear that [Defendant] would not compensate [Plaintiff] and his services would be unpaid"); *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Ctny., Inc.*, 558 F. Supp. 2d 378, 409 (E.D.N.Y. 2008) ("The statute of limitations for unjust enrichment begins to run when a defendant accepts the benefits bestowed upon him.").

And Plaintiff's consumer protection claim would have accrued in September 2020 when ByteDance allegedly misrepresented the alleged Oracle partnership as "a genuine divestment of TikTok's U.S. operations." (Compl. ¶ 132); *see Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp.*, 581 F. Supp. 2d 1215, 1223 (S.D. Fla. 2008) (FDUTPA claim accrued when plaintiff suffered actual damages as a result of defendant's violation).

All of this activity is alleged to have taken place by September 2020. Because more than four years have passed since Plaintiff's causes of action would have accrued, Plaintiff's claims, even if actionable, would be time-barred.

## IV.  Plaintiff's Complaint Should Be Dismissed With Prejudice.

Given the patent absurdity of Plaintiff's claims and their multiple, independent defects, "drafting a plausible complaint would be futile." *MSP Recovery Claims, Series LLC v. Caring Voice Coalition, Inc.*, 722 F. Supp. 3d 1296, 1321 (S.D. Fla. 2024); *see also Hogan v. Georgia*, 812 Fed. Appx. 975, 976 (11th Cir. 2020) (affirming dismissal without leave to amend where plaintiff alleged a "vast conspiracy" that was "wildly implausible" and "patently frivolous"). Beyond the facial implausibility of Plaintiff's allegations, granting leave to amend would be inappropriate because Plaintiff's principal, Brad Greenspan, has been declared a "vexatious

litigant," *IAC/InterActiveCorp*, 2016 WL 5724972, at *3, and has been sanctioned multiple times for his litigation conduct, *United States v. Google*, No. 20-03010, Minute Order (D.D.C. Jan. 25, 2024) ("In light of the court's denials of intervention by Brad Greenspan and his history of frivolous, repetitive filings, the Clerk of Court is hereby directed to accept no further filings from Mr. Greenspan in this matter, absent leave of court."); *Peermusic, III, Ltd. v. LiveUniverse, Inc.*, 2011 WL 2358549, at *13 (C.D. Cal. May 24, 2011) ("Monetary sanctions have failed to secure compliance. Evidentiary sanctions have failed to secure compliance. Dismissal is warranted."); *PeerMusic, III, Ltd. v. LiveUniverse, Inc.*, 2012 WL 4840803, at *1, 4 (C.D. Cal. Oct. 9, 2012) (ordering Greenspan and his company to pay attorney's fees for their "conduct in this litigation which greatly multiplied the proceedings," and noting their "blatant disregard for the civil justice system"). Everything about this Complaint suggests that he is engaged in similar conduct. Plaintiff's Complaint should be dismissed with prejudice.

## CONCLUSION

The Court should dismiss Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction. In the alternative, the Court should dismiss Plaintiff's Complaint with prejudice for failure to state a claim.

April 25, 2025                                Respectfully submitted,

                                               */s/Spencer Silverglate*
                                              Spencer Silverglate (Florida Bar No. 769223)
                                              Shawn Libman (Florida Bar. No. 10544)
                                              Ana Sarmento (Florida Bar. No. 1025053)
                                              CLARKE SILVERGLATE, P.A.
                                              5301 Blue Lagoon Drive, 9th Floor
                                              Miami, FL 33126
                                              Phone: 305-347-1557
                                              Facsimile: 305-377-3001
                                              ssilverglate@cspalaw.com
                                              slibman@cspalaw.com
                                              asarmento@cspalaw.com

Benjamin C. Block (*pro hac vice forthcoming*)
Noah H. Resnick (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
Phone: 202-662-6000
Facsimile: 202-778-6000
bblock@cov.com
nresnick@cov.com

*Attorneys for Defendants*
*ByteDance Ltd. and TikTok Inc.*

—20—

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all parties

that have appeared in this action.

            */s/Spencer Silverglate*
            Spencer Silverglate